## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| VENKATA CHOWDADA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-00655-JAR |
| | ) | |
| JUDGE TECHNICAL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Motions for Summary Judgment filed by both parties.

(Docs. 33, 50). For the reasons discussed below, Plaintiff Venkata Chowdada's motion (Doc. 33)

will be denied and Defendant Judge Technical Services, Inc.'s ("JTS") motion will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

JTS is a professional services staffing firm. (Doc. 51 at ¶ 1).[1] JTS recruits and hires

qualified candidates for placement with JTS clients. (*Id.* at ¶¶ 1-6). In October 2015, JTS

executed an agreement with Plaintiff, an Asian-Indian male, for temporary assignment as a

business analyst with Reinsurance Group of America ("RGA"). (*Id.* at ¶ 7). The agreement

between Plaintiff and JTS specifically provides that JTS "may terminate [the] employment

relationship at any time, for any reason, with or without cause" and includes Plaintiff's

acknowledgment that his "employment will not be for any fixed period of time." (Doc. 51-5 at ¶

---

[1] This Court accepts as true all statements of material fact in JTS' Statement of Uncontroverted Material Facts ("JTS SUMF"). (Doc. 51). Local Rule 4.01(E) provides that "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Plaintiff has not responded to the JTS SUMF, and all facts therein are accordingly deemed admitted. *See Wagner v. Brown*, No. 4:15-CV-01277 JAR, 2017 WL 3433630, at *1 n.2 (E.D. Mo. Aug. 10, 2017). The Court notes that Plaintiff's failure to properly respond does not mean summary judgment should be automatically granted. The undisputed facts as alleged by JTS still must establish that it is entitled to judgment as a matter of law. *Id.*

1). Plaintiff was hired by Brian Goddard, Director and Account Manager of JTS' St. Louis office, but worked primarily under William Reed, RGA's Director of Information Technology and Application Development. (Doc. 51 at ¶¶ 3-4).

On February 10, 2017, RGA informed JTS that it no longer required Plaintiff's services. (*Id.* at ¶ 16; Doc. 1-5). On February 22, 2017, Goddard notified Plaintiff that his assignment with RGA (and employment with JTS) would terminate two days later, on February 24, 2017. (*Id.* at ¶ 21). That same day, Plaintiff e-mailed Reed and explained he was "hoping [he] would at least get 2 weeks' notice unless [he] did something unacceptable." (Doc. 1-5 at 2). Reed responded that he informed JTS about his decision on February 10, 2017 and was "not sure why [JTS] contacted [him] a week later to discuss when to communicate that to you." (*Id.* at 1).

Plaintiff alleges that JTS' failure to provide two weeks' notice constitutes racial discrimination in violation of federal and state law. (Doc. 1).[2] Plaintiff filed charges of

---

[2] In his Complaint, Plaintiff checked a box indicating that the nature of the case involves "termination of [Plaintiff's] employment." (Doc. 1 at ¶ 10). Plaintiff has repeatedly clarified that the adverse action underlying his claim, however, is only the failure to provide two weeks' notice, *not* the decision to terminate him or any other action by JTS. The Complaint states: "It was clearly discrimination against me when 2 weeks['] notice was given but contacting my manager 1 week after to discuss when to notify and deciding to notify me 2 days prior to last day." (*Id.* at ¶ 12).

Plaintiff confirmed the limited scope of his Complaint in the following exchange at his deposition:

> Question: So the entire basis of your belief that you were racially discriminated against is because you were not notified of the end date of your employment with RGA until two days prior to the end date; is that correct?
>
> Answer: Yes.
>
> …
>
> Answer: That's the reason why, when based on [Reed's] response, I file this thinking that even though JTS is aware of two weeks before, I was not told until two days prior.
>
> …
>
> Question: Do you feel like RGA's termination of your employment was discriminatory?
>
> Answer: No, not giving two week[s'] notice by JTS is the **only discrimination I am filing about.**
> (Doc. 51-1 at 12-15, 36) (emphasis added).

discrimination with both the Equal Employment Opportunity Commission ("EEOC") and

Missouri Commission on Human Rights ("MCHR"). (Docs. 1-3, 1-4). This Court granted in part

JTS' Motion to Dismiss (Doc. 3) and held that Plaintiff's state law claims are time-barred. (Doc.

10). Accordingly, only Plaintiff's federal claim alleging racial discrimination under Title VII of

the Civil Rights Act of 1964 remains pending on these cross motions for summary judgment.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show

that there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate,

the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F.

Hutton & Co.*, 853 F.2d 616, 619 (8th Cir. 1988). The burden of proof is on the moving party

and a court should not grant summary judgment unless it is convinced that there is no evidence

to sustain a recovery under any circumstances. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-

op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The nonmovant, however, "'must do more than

---

Plaintiff's Complaint also states, however, that he was "never contacted by [JTS] on pursuing the next job." (Doc. 1 at 5). Even if this Court were to construe Plaintiff's Complaint as alleging discrimination for failing to re-hire, the claim fails as a matter of law. Plaintiff's Motion for Summary Judgment states that he has "applied for numerous jobs at RGA" since his termination but did not receive an interview. (Doc. 33 at 2). RGA is not the defendant here, however, and there is no evidence in the record suggesting that Plaintiff subsequently applied for jobs through JTS but was denied, let alone that such denial was for racially discriminatory reasons. Finally, Plaintiff admitted at his deposition that JTS in fact did contact him after his assignment with RGA terminated, as shown below:

> <u>Question</u>: Contrary to the last sentence in Paragraph 12 of your complaint, JTS at some point after your employment with RGA reached out to you [about] other job opportunities, isn't that correct?
>
> <u>Answer</u>: Yes.
>
> …
>
> <u>Question</u>: But JTS did make attempts to find a job for you after your employment with RGA, correct?
>
> <u>Answer</u>: Yes. But if you see the date, it's June 2017. I was unemployed with JTS in February. (Doc. 51-5 at 32, 48).

simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Where parties have filed cross motions for summary judgment, each motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Exel Inc. v. Int'l Broth. of Teamsters, Local No. 600*, No. 1:14-CV-81 JAR, 2015 WL 3795808, at *3 (E.D. Mo. June 18, 2015). Because Plaintiff is proceeding pro se, this Court liberally construes his Complaint and other submissions. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed a two-page motion for summary judgment ending with the conclusory assertion that there is "clear evidence of the Discrimination in Employment." (Doc. 33 at 2). The filing includes two short sections entitled "Facts" and "Conclusion" respectively. As JTS notes, Plaintiff has failed to comply with the local rules because he did not separately file a "Statement of Uncontroverted Material Facts." E.D. Mo. L.R. 4.01(E). Plaintiff's filing also includes no substantive arguments, citations to relevant precedent, or other basis on which this Court can properly evaluate its legal claims. *See* E.D. Mo. L.R. 4.01(A) ("Unless otherwise directed by the Court, the moving party must file with each motion a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the party relies."). Plaintiff has also failed to properly support his factual assertions as required by Fed. R. Civ. P. 56(e).

A pro se litigant "is not excused from compliance with substantive and procedural law." *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986). While this Court is not inclined to deny the motion purely for failing to comply with the local rules, Plaintiff's motion must be denied because it provides no evidence establishing a prima facie case of discrimination under Title VII. Instead, the motion is "void of supporting evidence beyond [Plaintiff's] own averments." *Proby v. Russell*, No. 4:14-CV-1620 JAR, 2016 WL 4263449, at *8 (E.D. Mo. Aug. 12, 2016). Indeed, at no point whatsoever does the motion plausibly connect the alleged adverse action (late notice of termination) with any evidence of discrimination. "Because [P]laintiff's motion for summary judgment does not contain any evidence or arguments that support the entry of summary judgment in [his] favor . . . the motion will be denied." *Watt v. Brennan*, No. 4:14-CV-1473 CAS, at *9 (E.D. Mo. Sept. 29, 2015).

## IV. JTS' MOTION FOR SUMMARY JUDGMENT[3]

### A. STANDARD FOR DISPARATE TREATMENT UNDER TITLE VII

Plaintiff alleges that JTS violated Title VII by discriminating against him based on his Asian-Indian ethnicity. (Doc. 1). An employee is not required to provide direct evidence to prove racial discrimination under Title VII. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92, 98-101 (2003). Instead, an employee can establish a prima facie claim of discrimination by showing that (1) he is a member of a protected group; (2) he was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees

---

[3] JTS filed its Motion for Summary Judgment on November 20, 2020. (Doc. 50). On December 22, 2020, after no response had been filed, this Court ordered Plaintiff to show cause by January 8, 2021 why the Court should not rule on the unopposed motion. (Doc. 53). Plaintiff did not respond until January 12, 2021. (Doc. 54). As noted above, pro se litigants "are not excused from compliance with relevant rules of the procedural and substantive law." *Brown*, 806 F.2d at 804. In its discretion, and considering Plaintiff's pro se status, the Court will accept this late filing. The Court notes that Plaintiff's response simply restates previously made assertions without proper citation to admissible evidence or relevant precedent.

5

who were not members of the protected group were treated differently. *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005) (citing *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[4] If Plaintiff can make such a prima facie case, the burden shifts to JTS to establish a legitimate, non-discriminatory reason for the adverse employment action. *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). JTS argues that Plaintiff cannot make out a prima facie case of discrimination because there was no adverse employment action and Plaintiff has not demonstrated that similarly situated employees were treated differently.

B. ADVERSE EMPLOYMENT ACTION[5]

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 671 (8th Cir. 2006) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015) (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003)). The question before this Court is whether JTS' failure to provide two weeks' notice constitutes an adverse employment action.

Plaintiff argues that he should have been informed of his termination on February 10, 2017 instead of February 22, 2017. He claims that "it took months in finding [his] next job" and he was therefore harmed by the delay in providing notice. As discussed above, JTS' contract

---

[4] Plaintiff did not specifically state that he was relying on circumstantial evidence to prove discrimination. Since Plaintiff did not provide direct evidence of discrimination, however, this Court will apply the burden-shifting framework of *McDonnell Douglas Corp.*

[5] If this Court liberally construed Plaintiff's Complaint as alleging that he was terminated due to racial discrimination (despite Plaintiff's clear statements that this is not his claim), such termination would constitute an adverse employment action. Yet Plaintiff has not provided any evidence of racial discrimination, nor has he demonstrated that similarly situated employees were treated differently. Accordingly, summary judgment in favor of JTS would be warranted even under such a liberal construction of the Complaint.

with Plaintiff does not contain any notice requirement. (Doc. 51-5). At his deposition, Plaintiff argued that "normally every employee will get two week[s'] notice" and explained that "two week[s'] notice was [his] assumption" and he "just hoped" such notice would be provided. (Doc. 51-1 at 24-25, 40).

Plaintiff cites no precedent suggesting mere delay in notice of termination constitutes an adverse employment action.[6] Instead, in the limited instances where this claim has arisen, courts have consistently held that failure to provide notice, when such notice is not contractually required, is not an adverse employment action. *See DeWitz v. Teleguam Holdings*, No. 1:11-CV-36, 2014 WL 3028660, at *1 (D. Guam July 3, 2014) ("[F]ailure to provide notice of termination is not an adverse employment action here."); *Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 91 (D.D.C. 2013) ("While the defendant's failure to provide the plaintiff with two weeks' notice of his schedule change was perhaps inconvenient for plaintiff, nothing about the failure to provide the customary notice . . . caused the plaintiff to suffer objectively tangible harm.").

This Court acknowledges that failure to provide notice may rise to the level of an adverse employment action in some circumstances. Appropriate factors to consider include whether notice was contractually mandated, the delay in providing notice, and any unique effects on the plaintiff based on individual employment circumstances (*e.g.*, impact on health benefits). In the case at hand, Plaintiff's contract did not require any notice, there was only a 12-day delay caused by JTS' failure to provide notice, and Plaintiff has not submitted any evidence of specific harm caused by the delay. Therefore, JTS' failure to gratuitously provide notice of termination on

---

[6] In *Wargnier v. Nat'l City Mortgage Inc.*, the court did find that defendant's failure to provide 60 days' notice constituted an adverse employment action. No. 09-CV-2721 W (BGS), 2012 WL 12953738, at *10 (S.D. Cal. Mar. 29, 2012). Unlike here, however, the plaintiff in *Wargnier* claimed that her contract mandated 60 days' notice, she suffered a lapse in insurance coverage due to the defendant's breach of contract, and she was denied severance benefits. Therefore, *Wargnier* is easily distinguished from the case at hand.

February 10, 2017 is not an adverse employment action, and Plaintiff accordingly cannot make

out a prima facie case of discrimination under Title VII.

C.   <u>SIMILARLY SITUATED EMPLOYEES</u>

   To establish a prima facie case of discrimination under Title VII, Plaintiff must also show

that similarly situated employees who were not members of the protected group were treated

differently. This prong is "rigorous and requires that other employees be similarly situated in all

relevant aspects before the plaintiff can introduce evidence comparing [himself] to other

employees." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Cronquist*

*v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001)). Plaintiff has the burden of providing

the Court with "specific, tangible evidence that employees who were similarly situated in all

respects to him received different treatment from" the employer. *Philip v. Ford Motor Co.*, 413

F.3d 766, 768 (8th Cir. 2005).

   Plaintiff has not alleged in his Complaint or any other filing with this Court that similarly

situated employees were treated differently. Instead, Plaintiff has clearly admitted that he is not

aware of any other similarly situated employees who were treated differently. The following

exchange at Plaintiff's deposition is particularly relevant:

> <u>Question</u>: I want to turn your attention to Paragraph 8 of Defendant's Exhibit H.
> And it asks you to describe who was in the same position or similar situation as
> you and how they were treated. Okay? Who was in the same or similar situation
> as you but were a different race that were treated differently?
>
> <u>Answer</u>: I don't have those details. I didn't specify anything. I don't know.
>
> <u>Question</u>: You don't know if anybody was treated differently than you that was of
> a different race than you?
>
> <u>Answer</u>: No.
>
> <u>Question</u>: Do you know whether or not any non-Asian-Indian people were treated
> differently than you by JTS?

> Answer: No.
>
> Question: Do you know if anybody who worked as a business analyst for RGA was treated differently than you by JTS and was also non Asian-Indian?
>
> Answer: No.
>
> Question: Do you know whether or not all the business analysts were only given two days['] notice of their end date with RGA?
>
> Answer: No, I do not. (Doc. 55-1 at 44-45).

Plaintiff did claim at his deposition that two other Asian-Indian individuals employed by JTS were terminated from their contracts with RGA with only two days' notice. (*Id.* at 30; Doc. 54 at 1). This is not enough to make a prima facie case under Title VII, however, because Plaintiff was required to demonstrate that non-Asian-Indian employees were treated differently. Without such evidence, this Court cannot determine whether Asian-Indian employees were treated differently or, alternatively, all employees were only given two days' notice when their contracts with JTS clients were terminated. Because Plaintiff has not come forward with "specific facts showing that there is a genuine issue for trial" on this issue, he cannot make out a prima facie case of discrimination. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986).

D.  JTS' NON-DISCRIMINATORY EXPLANATION

Even if Plaintiff could make out a prima facie case of discrimination, this would only shift the burden to JTS to provide a legitimate, non-discriminatory explanation for the adverse employment action. *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Upon providing such explanation, the presumption of discrimination established by the prima facie case "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). The burden shifts back to the Plaintiff to prove that the articulated reason is just pretext for discrimination. *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1995).

9

JTS claims that Plaintiff only received two days' notice "consistent with JTS' policy and past practice of informing temporary workers who have access and confidential information of JTS' client about the end of an assignment on or near the end date." (Doc. 51 at ¶ 24). JTS states that it adopted this practice "as a result of repeated client requests to avoid or reduce the likelihood of disgruntled temporary workers improperly accessing or taking confidential and proprietary information." (*Id.* at ¶ 25). In an affidavit before this Court, Brian Goddard of JTS swore that Plaintiff received two days' notice in accordance with standard JTS policy and practice. (Doc. 51-2). The Court finds this explanation reasonable and determines that JTS has met its burden of providing a legitimate, non-discriminatory explanation for its decision to only provide two days' notice. Plaintiff has not offered any reason to believe that this explanation is pretextual. Therefore, even if Plaintiff could make a prima facie case of employment discrimination, summary judgment in favor of JTS would be warranted.

## V.      CONCLUSION

This Court sympathizes with Plaintiff and recognizes that termination from employment with short notice can result in hardship. There is simply no evidence in the record, however, from which a reasonable factfinder could conclude that Plaintiff has made out a prima facie case of racial discrimination or that JTS' non-discriminatory explanation for its decision is merely pretextual. Because there are no genuine issues of material fact, JTS is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Venkata Chowdada's Motion for Summary Judgment (Doc. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Judge Technical Services, Inc.'s Motion for Summary Judgment (Doc. 50) is **GRANTED**. A separate Order of Judgment will accompany this Memorandum and Order.

Dated this 19th day of January, 2021.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

11